IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| CINDY COSPER, INDIVIDUALLY ) <br> AS SURVIVING CHILD OF ) <br> RONNIE AMMERSON and ALLAN ) <br> MYERS AS TEMPORARY ) <br> ADMINISTRATOR OF THE ESTATE OF ) <br> RONNIE AMMERSON ) <br>   ) <br>   Plaintiff, ) <br>   ) <br> vs. ) <br>   ) <br> FORD MOTOR COMPANY, ) <br>   ) <br> Defendant. ) | CIVIL ACTION FILE <br> NO. 2:18-cv-00189-RWS |

## FIRST AMENDED COMPLAINT

COME NOW Cindy Cosper, Individually, as surviving child of Ronnie Ammerson, and Allan Myers, as the Temporary Administrator of the Estate of Ronnie Ammerson, and hereby state their claims against Defendant Ford Motor Company as follows:

### PARTIES, JURISDICTION AND VENUE

1.

Cindy Cosper is a Georgia resident and the surviving child of Ronnie Ammerson, and asserts her wrongful death claims for the death of her father, Ronnie Ammerson.

2.

Allan Myers asserts the Estate claims of Ronnie Ammerson, Deceased, as the duly appointed Administrator of the Estate.

3.

Defendant Ford Motor Company ("Ford") is a Delaware corporation with its principal place of business in Dearborn, Michigan. Ford is registered and transacts business in the State of Georgia.

4.

Defendant Ford's registered agent is The Corporation Company, 112 North Main Street, Forsyth County, Cumming, Georgia 30040.

5.

Defendant Ford's registered office is in Forsyth County, Georgia.

6.

Defendant Ford transacts business in Georgia and has engaged in activity in violation of Georgia tort law that severely injured and killed Ronnie Ammerson.

7.

Defendant Ford is subject to personal jurisdiction in this Court.

8.

This Court has jurisdiction over this case.

## OPERATIVE FACTS

9.

On December 25, 2015, Mrs. Cosper was driving her 2000 Ford Explorer, VIN Number 1FMZU64P6YUB78663, on Corinth Poseyville Road in Haralson County, Georgia.

10.

Mrs. Cosper's father, Ronnie Ammerson, was a restrained passenger in the front seat.

11.

The Ford Explorer overturned and rolled.

12.

The Ford Explorer's roof failed and crushed into the vehicle.

13.

Mr. Ammerson's seatbelt unspooled during the rollover and did not keep him secured to his seat.

14.

Mr. Ammerson's seatbelt unspooled because the seatbelt system lacked pretensioners.

15.

Mr. Ammerson was taken by air ambulance to Grady Memorial Hospital.

16.

Mr. Ammerson was diagnosed with severe injuries, including incomplete quadriplegia.

17.

Mr. Ammerson remained in the ICU at Grady Memorial Hospital for an extended period of time.

18.

On January 28, 2016, Mr. Ammerson was transferred to Shepherd Center.

19.

On May 3, 2016, Mr. Ammerson was discharged to home and scheduled for follow up with his local doctor.

20.

On May 7, 2016, Mr. Ammerson died as a direct and proximate result of the injuries he sustained from the rollover.

21.

Mr. Ammerson's injuries, including but not limited to, his vertebrae fractures and incomplete quadriplegia, were a direct and proximate result of the failure of the

Ford Explorer's roof and the failure of the Ford Explorer's seatbelt to perform properly during the rollover.

22.

Mr. Ammerson's death was a direct and proximate result of the failure of the Ford Explorer's roof and the failure of the Ford Explorer's seatbelt to perform properly during the rollover.

23.

At the time Ford manufactured the Explorer, it knew that its vehicle had a greater propensity to rollover than similar vehicles.

24.

At the time Ford manufactured the Explorer, Ford knew that its roof was structurally defective such that it would fail and intrude into the passenger compartment in a rollover event.

25.

At the time Ford manufactured the Explorer, Ford knew that its seatbelt system lacked pretensioners and would unspool in a rollover. Ford knew the danger posed by a seatbelt system without pretensioners and installed a seatbelt system with pretensioners in Volvo products.

26.

At the time of the rollover on December 25, 2015, the Ford Explorer was free of any alterations or aftermarket changes affecting the roof, seatbelt system, or the vehicles propensity to rollover. The Subject Ford Explorer was in the same condition and engineered configuration at the time of the subject condition as when the vehicle was manufactured and originally sold, with the only variation being normal wear to a vehicle its age. Any wear is immaterial to the claims in this lawsuit.

27.

At the time Ford manufactured the Subject Ford Explorer and at all times thereafter, Ford knew that its design for the Ford Explorer was defective because the roof was not capable of protecting vehicle occupants in a rollover, the vehicle's seatbelts lacked pretensioners and would unspool in a rollover, thereby failing to keep vehicle occupants secured to their seats, and that the Ford Explorer had an unreasonable propensity to rollover. Ford had knowledge of the defects due to, among other things, lawsuits, investigations, and complaints of incidents substantially similar to the one in this case.

28.

Defendant Ford's conduct giving rise to the claims in this case showed willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

29.

Defendant Ford's conduct giving rise to the claims in this case manifests a willful, reckless, and wanton disregard for life or property.

30.

Ronnie Ammerson's medical bills are in excess of two million five hundred thousand dollars ($2,500,00.00).

## COUNT I
## STRICT LIABILITY
## DEFECTIVE DESIGN, MANUFACTURE, AND WARNINGS

31.

Pursuant to O.C.G.A. § 51-1-11(b)(1), Defendant Ford is strictly liable for as the manufacturer of the Subject Ford Explorer.

32.

Because Ford's conduct was willful, reckless, and showed a wanton disregard for human life, the limitation contained in O.C.G.A. § 51-1-11(b)(2) does not apply in this case.

33.

Defendant Ford was solely responsible for the design, manufacture, and labeling of the subject Ford Explorer, including the selection of warnings provided to consumers.

34.

Defendant Ford placed the subject Ford Explorer into the stream of commerce for sale to the public.

35.

At the time the Ford Explorer was manufactured through the present day, Defendant Ford has engaged in the business of designing, manufacturing, and distributing automobiles for sale and use by the motoring public.

36.

Defendant Ford is strictly liable to Plaintiff because the Subject Ford Explorer was defective at the time Ford placed it into the stream of commerce because it was: (1) unfit for its intended and foreseeable use; (2) defective; and (3) unreasonably dangerous to all users and passengers who would ride in the Subject Ford Explorer.

37.

The Subject Ford Explorer was defective in its design characteristics because it had an unreasonable propensity to rollover when compared with similar vehicles;

its roof lacked structural integrity when compared with similar vehicles; and its seatbelts lacked pretensioners and would unspool in a rollover collision.

38.

The risk of the chosen design greatly outweighs any utility provided by the chosen design, rendering the Subject Ford Explorer defective.

39.

An alternative, safer design was feasible at the time the Subject Ford Explorer as designed and manufactured.

40.

The defective condition of the Subject Ford Explorer existed at the time the Subject Ford Explorer left its point of manufacture remained present at the time it was sold to Mrs. Cosper.

41.

The defective condition of the Subject Ford Explorer existed at the time the Subject Ford Explorer left its point of manufacture and remained present at the time it was sold until the collision on December 25, 2015.

42.

The defective condition was the proximate cause of Mr. Ammerson's injuries and death.

43.

Defendant Ford is strictly liable to Plaintiff for all of Mr. Ammerson's injuries and damages caused by the defective nature of the Subject Ford Explorer.

44.

Defendant Ford is strictly liable to Plaintiff for the full value of Mr. Ammerson's life.

## COUNT II
## WILLFUL, RECKLESS AND WANTON MISCONDUCT

45.

Defendant Ford had a duty to design, manufacture, and distribute products, including the Subject Ford Explorer, that are not unreasonably dangerous to consumers, users, and those who might be foreseeably harmed if Defendant Ford's products are defective.

46.

Defendant Ford not only violated its basic duty, but was willful, reckless, and wanton when it designed, manufactured, and sold the Subject Ford Explorer because it knew that the design and materials selected created an unreasonable risk of rollover, roof failure in a rollover, and seatbelt failure from unspooling due to lack of pretensioners.

47.

Further, despite knowledge that its vehicles were defective, Ford took no action to remediate the risk to foreseeable users of the Subject Ford Explorer or similar vehicles manufactured by Ford. For example, Ford did not recall the vehicles to strengthen the roof or even to install the same life-saving seatbelt pretensioners that Ford installed in its Volvo vehicles.

48.

Defendant Ford is liable for the full value of Mr. Ammerson's life and all of Plaintiffs' damages due to its willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

**COUNT III**
**BAD FAITH**

49.

Defendant Ford's conduct in knowingly placing a highly dangerous product in the stream of commerce invokes a species of bad faith that warrants an award of expenses of litigation to Plaintiff, including reasonable attorney's fees in bringing and prosecuting this civil action, as provided by O.C.G.A. § 13-6-11.

## **DAMAGES CLAIMED**

50.

The damages claimed by Plaintiffs are proximately caused by the tortious acts and omissions of Defendant

51.

Plaintiff Cosper claims all damages (both economic and non-economic) allowed under Georgia law for the wrongful death of Ronnie Ammerson, such damages to be determined by the enlightened conscience of a fair and impartial jury.

52.

Plaintiff Myers, on behalf of the Estate of Ronnie Ammerson, claims general damages against Defendant for all elements of the mental and physical pain and suffering, endured by the decedent Ronnie Ammerson from the time of the subject incident until his death, as defined by Georgia law with such damages to be determined by the enlightened conscience of a fair and impartial jury.

53.

Plaintiff Myers, on behalf of the Estate of Ronnie Ammerson, claims as special damages against Defendant the funeral, burial, and medical expenses incurred because of this incident.

54.

Plaintiff Myers, on behalf of the Estate of Ronnie Ammerson, seeks punitive damages against Defendant in an amount sufficient to punish, penalize, and deter it in an amount to be determined by the enlightened conscience of a fair and impartial jury.

55.

WHEREFORE, Plaintiffs demand judgment against Defendant Ford as follows:

a. For the full value of the life of Ronnie Ammerson;

b. Punitive damages;

c. Attorneys fees and costs;

d. All applicable statutory damages;

e. Prejudgment interest and costs, where awardable; and

f. For such other and further relief as the Court may deem just and proper

Dated this 7th day of January 2020.

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to LR 7.1 D, ND Ga., that the foregoing pleading was prepared using 14-point Times New Roman font.

*/s/ C. Tab Turner*
C. Tab Turner
*Admitted Pro Hac Vice*

Damon Singleton
*Admitted Pro Hac Vice*
Turner & Associates, P.A.
4705 Somers Avenue
Suite 100
North Little Rock, Arkansas
501-791-2277

/s/ Matthew E. Cook
Matthew E. Cook
Georgia Bar No. 184399
Kate S. Cook
Georgia Bar No. 280584
Robert H. Childres III
Georgia Bar No. 721558
Nathan R. Nicholson
Georgia Bar No. 390553
Cook Law Group, LLC
P.O. Box 2415
Gainesville, GA  30503
678-928-3899 Telephone
888-612-0589 Facsimile
matt@cook-lawgroup.com
kate@cook-lawgroup.com
robert@cook-lawgroup.com

Jonathan A. Parrish
The Parrish Law Firm, LLC
Resurgens Plaza, Suite 2250
945 East Paces Ferry Road, NE
Atlanta, GA 30326
jparrish@parrishfirm.com
Tel: 404-891-0141
Fax: 404-891-0143

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the above with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Michael R. Boorman
Dwayne A. Brown, Jr.
Huff Powell Bailey LLC
999 Peachtree Street NE, Suite 950
Atlanta GA 30309
dbrown@huffpowellbailey.com
mboorman@huffpowellbailey.com

D. Alan Thomas
*Admitted Pro Hac Vice*
Paul F. Malek
*Admitted Pro Hac Vice*
Huie, Fernambucq & Stewart, LLP
3291 US Highway 280
Suite 200
Birmingham, AL 35243
AThomas@huielaw.com
PMalek@huielaw.com

***Attorneys for Defendant Ford Motor Company***

This 7th day of January 2020.

s/ *Matthew E. Cook*
Matthew E. Cook
Georgia Bar No. 184399