IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| CINDY COSPER, Individually as Surviving Child of RONNIE AMMERSON, and ALLAN MYERS as Temporary Administrator of the ESTATE OF RONNIE AMMERSON<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:  Civil File No.: **2:18-cv-00189-RWS**<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**DEFENDANT FORD MOTOR COMPANY'S MOTION TO AMEND SCHEDULING ORDER AND TO COMPEL ACCESS TO KEY EVIDENCE**

COMES NOW Defendant Ford Motor Company ("Ford") and submits its Motion to Amend Scheduling Order and Compel Access to Key Evidence, showing the Court as follows:

**STATEMENT OF FACTS**

This case involves a 2000 4-door Ford Explorer (VIN 1FMZU64P6YUB78663) that was involved in a single-vehicle rollover crash on December 25, 2015 in Bremen, Georgia. Plaintiffs have brought claims against Ford

1

for strict liability and willful, reckless, and wanton misconduct. More specifically, Plaintiffs assert numerous manufacturing and design defects in the Explorer, as well as a failure to warn. These claims all stem from the general allegation that the subject Explorer was defective in design. One key question in this case is whether the decedent, Ronnie Ammerson, was properly restrained at the time of the crash.

Some time after this crash, Plaintiffs' counsel took possession of the subject Explorer and shipped it to Little Rock, Arkansas for storage. Ford's experts and counsel have sought to travel to Arkansas to inspect the vehicle and perform a detailed, non-destructive, removal and examination of the seatbelts in the subject vehicle. In addition to requiring a signed liability waiver (attached as Exhibit A), Plaintiffs' counsel have placed burdensome and unreasonable restrictions on Ford's ability to so inspect the vehicle, including all of the following:

- Charging $750 per inspection;
- Allowing a single engineer at the vehicle at a time;
- Requiring any expert who inspects the Explorer to be vaccinated against COVID or provide a recent negative COVID test;
- Requiring that masks be worn;
- Requiring that the inspection will be done outdoors;
- Requiring that the inspection will be non-destructive;

- No handling of components allowed – inspections are limited to only "photographs and measurements";

- No entry into the facility (including to access restrooms);

- Barring attorneys from being present unless they prove that they are fully vaccinated;[1]

- Requiring experts to be alone when inspecting the vehicle (i.e., the lawyer who hired the expert is not permitted to be with the expert when he/she inspects the vehicle);

- Barring all "handling of components" – inspections are limited to only "photographs and measurements";[2] and

- Requiring all attendees to "sign a waiver of responsibility for consequence".

(See Turner & Associates' COVID Protocol for Warehouses, attached as Exhibit B).

Ford seeks relief from only a small subsection of these requirements, namely:

1. Requirements that participants *prove to Plaintiffs' counsel* that they are vaccinated (or have tested negative/have antibodies); and,

---

[1] Note the different standard for attorneys and experts – experts can be present with proof of a negative test or antibodies, while counsel for Ford cannot.

[2] For this particular inspection, Plaintiffs' counsel has agreed to a seatbelt removal protocol which will allow Ford to bypass this prohibition.

2. The requirement that only a single engineer can be present at the vehicle at a time.

All participants in the inspection will be wearing masks, will be outside, and have signed liability waivers. These additional restrictions are overly burdensome, unreasonable, and do not protect any vital interest of the Plaintiffs or their counsel.

Moreover, Plaintiffs' counsel has been unreasonable in even responding to Ford's requests to inspect the vehicle. In particular, Ford restraints expert Will Van Arsdell has been seeking to inspect the subject Explorer and its restraints system components since October 2019. (See Email Correspondence, attached as Exhibit C). The following table summarizes the extraordinary lengths Ford had to go to finally allow Dr. Van Arsdell to inspect this vehicle:

| Date | Correspondence |
|---|---|
| 2019.10.07 | Email from Mindy Ruggiero to Ben Casto to schedule inspection on 2019.12.18 |
| 2019.10.22 | Email from Ben Casto confirming inspection on 2019.12.18 |
| 2019.12.12 | Email from Ben Casto stating there was a "scheduling error", the facility is double-booked, and the inspection cannot go forward on 2019.12.18 |
| 2021.02.09 | Email from Mindy Ruggiero inquiring on status of facility reopening |
| 2021.02.11 | Email from Ben Casto indicating facility is still closed |
| 2021.02.17 | Email from Tab Turner stating that facility would be open "partially for inspections" |
| 2021.09.02 | Email from Mindy Ruggiero to Peyton Land to schedule inspection on 2021.10.20 |
| 2021.09.13 | Email from Mindy Ruggiero to Peyton Land following up on inspection on 2021.10.20 |
| 2021.09.13 | Email from Peyton Land indicating that he needs confirmation of protocols and that 2021.10.20 should work for inspection |
| 2021.09.27 | Email from Paul Malek to Tab Turner to schedule belt inspection and component removal on 2021.10.20 |
| 2021.10.18 | Email from Paul Malek to Tab Turner regarding belt inspection and component removal to combine into single inspection |
| 2021.10.28 | Email from Mindy Ruggiero to Tiffany Craig following up on date for joint belt and component removal |
| 2021.11.10 | Email from Paul Malek to Juan Gonzalez to get update on mutual agreeable date to schedule inspection and component removal |
| 2021.11.18 | Email from Paul Malek to Tab Turner following up on date for joint inspection and component removal and requesting extension for Ford expert reports |
| 2021.11.18 | Email from Tab Turner indicating that scheduling should be done with Juan Gonzalez extension will not be granted for Ford expert reports |
| 2021.11.22 | Email from Paul Malek to follow up on scheduling joint belt inspection and component removal |
| 2021.11.22 | Email from Juan Gonzalez offering 2021.12.09 and 2021.12.16 for joint belt inspection and component removal |
| 2021.11.22 | Email from Tab Turner indicating COVID protocol is subject to change on the 1st of each month and medical consultant has not yet been consulted for |

|            | December                                                                                                                                                                                  |
|------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 2021.11.29 | Email from Mindy Ruggiero to Juan Gonzalez to confirm joint belt inspection and component removal on 2021.12.16                                                                           |
| 2021.12.07 | Email from Paul Malek to Tab Turner and Juan Gonzalez further confirming 2021.12.16 joint belt inspection and requesting extension to 2021.12.30 for Ford expert reports                  |
| 2021.12.07 | Email from Tab Turner to Paul Malek denying request for extension for Ford expert reports                                                                                                 |
| 2021.12.07 | Email from Paul Malek to Juan Gonzalez and Jerry Wilson requesting current COVID-19 protocol                                                                                              |
| 2021.12.07 | Email from Tab Turner to Paul Malek indicating that for visual inspections and weather permitting, they will move vehicle outside far enough from facility to "not bother with the protocols". |

(See Exhibit C).

Time was of the essence in getting Dr. Van Arsdell's inspection scheduled, as Ford is required by the latest Scheduling Order to issue its experts' Rule 26 Reports on or before December 13, 2021. As identified above, Plaintiffs would not agree to an extension of Ford's expert disclosure deadline, even given their lack of cooperation in allowing Dr. Van Arsdell to inspect the subject vehicle, their inability to make all of their own experts available for deposition within the time period provided by the Court's Scheduling Order, and a family medical emergency for Ford's counsel taking the lead on arranging Dr. Van Arsdell's inspection. Even more egregious still, Plaintiffs would not agree to an extension of time for Ford to disclose their experts, *despite Ford having agreed to three such prior extensions for Plaintiffs to disclose their experts*. (See Doc. 56, Doc. 60, Doc. 73).

6

As a result, Dr. Van Arsdell is now forced to issue his Rule 26 Report subject to his findings at future inspection.

## ARGUMENT

**1. Ford should be permitted to inspect the subject Explorer without the restrictions imposed by Plaintiffs' Counsel.**

"[I]t is the established policy of the federal courts to accord a 'broad and liberal treatment' to the rules of discovery." Alimenta (U.S.A.), Inc. v. Anheuser-Busch Companies, Inc., 99 F.R.D. 309, 312 (N.D. Ga. 1983), citing Hickman v. Taylor, 329 U.S. 495 (1947). Thus, a trial court's decision regarding the scope of discovery will not be overturned absent a showing "the district court abused its discretion." Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1570 (11th Cir. 1992).

Rule 34(b)(1) provides that a party may request the production of evidence so long as the party specifies "a reasonable time, place, and manner for the inspection and for performing the related acts." Fed. R. Civ. P. 34(b)(1). Specifically, in products liability actions, courts across the country have routinely held that defendants are entitled to the production of allegedly defective products for the purposes of inspection and examination. See, e.g., Richardson v. Fiat Chrysler Automobiles (FCA) US, LLC, No. 7:19-CV-15-HL, (M.D. Ga. 2019) (ordering Plaintiffs in product liability case to make subject vehicle available for inspection

7

without placing limitations on the number of times the defendant manufacturer and its experts are allowed to inspect it) (Order attached as Exhibit D); Fullone v. Goodyear Tire & Rubber Co., 107 F.R.D. 1 (W.D.N.Y. 1985) (Court ordered manufacturer was entitled to second inspection of allegedly defective product, noting there was "no valid reason why defendant should be precluded from additional and private non-destructive examination and testing of the rim in question." ); Ex Parte Goodyear Tire & Rubber Co., 150 S.E.2d 525 (S.C. 1966) (upholding order permitting defendant tire manufacture to inspect tire that allegedly caused motor vehicle accident at issue, and stating "Goodyear cannot adequately prepare its defense in the law actions unless allowed an inspection of the tire before trial, including an opportunity for expert evaluation and study …"); Quinn v. Chrysler Corp., 35 F.R.D. 34 (W.D. Pa. 1964) (granting manufacturer's motion to compel production of allegedly defective product for photographing, x-ray examination, and testing); Binke v. Goodyear Tire and Rubber Company, 55 A.D.2d 632, 390 N.Y.S.2d 163 (2d Dep't 1976) ("Defendants are entitled to inspection and discovery of the tire alleged to have caused the vehicle in question ... It would be unjust to require the defendants to defend the action without the aid of [that] item"). See also Int'l Harvester Co. v. Cunningham, 245 Ga App 736, 739 (2000) ("Discovery should ensure that a party is not placed at a disadvantage simply because

it does not have custody of certain evidence or because it is diligent and examines evidence early in the litigation …").

In Georgia, fair access to evidence necessary to prosecute or defend an action must be made equally available to all parties. Plaintiffs have possession of, and unfettered access to, the crash vehicle and yet they have created numerous overbearing and unreasonable requirements in order for Ford to inspect *the very product they allege to be defective in this product liability action*.

The numerous restrictions put in place by Plaintiffs' counsel under the guise of being precautious regarding COVID-19 are overbearing and inconsistent with the public policy of Georgia. Namely, Plaintiffs' requirement that participants *prove to Plaintiffs' counsels' employees* that they have received a vaccine or negative COVID test for experts and a vaccine for attorneys violates a person's right to privacy in their medical information. (See State of Georgia Executive Order: Prohibition of COVID-19 Vaccine Passports, attached as Exhibit E, p. 2). Federal law also stresses the importance and sanctity of an individual's medical privacy. See 42 U.S.C.A. § 12112(d)(4) (allowing for "covered entities", such as employers, to conduct voluntary medical examinations and request medical histories, but mandating that the medical information obtained must be "treated as a confidential medical record"). Further still, the Eastern District of Michigan - where Ford is

9

headquartered - recognizes the responsibility of employers to protect the medical information of its employees, holding that "[t]he public has an overwhelming interest" that medical information provided to employers remain private and secure. Dow Corning Corp. v. Chaganti, No. 15-cv-13781, 2015 WL 6735335 *11 (E.D. Mich. 2015).

Notably, a state court in Arizona just recently considered this exact same restriction imposed by Plaintiffs' counsel and found it was inappropriate:

> I will just say this that right now it has not been established to the Court the necessity or need for any attorney or expert hired by counsel for any of the parties to have to show a negative COVID test or a recent negative COVID test or proof that they've been vaccinated to be able to inspect and view the subject vehicle.(See Transcript from October 21, 2021 Hearing in Blum v. Ford, et al, attached as Exhibit F, 20:12-18).[3]

Further, the requirement that only one engineer is allowed at the vehicle at a time does nothing to prevent the transmission of COVID, but does place a great burden on the ability of Ford's attorneys and experts to conduct a useful examination of the vehicle. Plaintiffs' counsel is well protected from liability by his waiver – which no participant is challenging. Further, if Plaintiffs' counsel or his employees are not comfortable being around the vehicle during the inspection, they do not have to be in close proximity to the vehicle or Ford's attorneys or experts – after all, the

---

[3] The Superior Court of Coconino County has not yet issued an Order memorializing its ruling from the bench, but Ford can supplement this Motion upon issuance and receipt of such an Order.

inspection will be videotaped. Plaintiffs' counsel's requirements do nothing to protect themselves and only serve to inconvenience Ford's attorneys and experts from effectively conducting an inspection of the subject vehicle.

In sum, Plaintiffs' conduct is contrary to the letter and spirit of discovery under the Federal Rules as applied in Georgia. Ford's ability to develop and support its defenses in this action, especially through the opinions of its experts, is materially impaired by its inability to inspect the most critical piece of evidence in the case – the crash vehicle itself.

> 2. **The Scheduling Order should be amended to allow Ford additional time for its experts' reports.**

This Court previously entered a Scheduling Order to govern the various deadlines in this case, including the parties' disclosure of experts. (Doc. 73). The Scheduling Order that is currently in place is the third iteration of the original scheduling order entered in this case. (See Doc. 56 and 60). Each prior amendment was the result of a request by Plaintiffs to extend their deadline for expert disclosures.

Despite its diligent efforts described above, Ford's restraints expert William Van Arsdell has not been able to complete an inspection of the vehicle. This inspection is critically necessary in order for him to render full opinions in this case. Ford intends to disclose all of its experts on the December 13, 2021 deadline

previously set by this Court. However, Dr. Van Arsdell will submit a report, but is forced to not render full opinions because Plaintiffs' counsel has denied him reasonable access to the subject Explorer. Ford requested that Plaintiffs agree to an extension of the deadline for Dr. Van Arsdell's Report. Plaintiffs' counsel declined. (See Exhibit C (12.07.2021 email from Tab Turner)).

Ford requests that this Court amend the scheduling order to allow Dr. Van Arsdell to amend his report pursuant to Rule 26(a)(2) within 14 days of his inspection of the subject Explorer (without the restrictions imposed by Plaintiff's Counsel, as described above).

## CONCLUSION

The undersigned counsel certify that they have conferred in good faith with Plaintiffs' counsel (multiple times as shown above) in an effort to resolve these issues without court action.

For the reasons set forth above, Ford requests that this Court GRANT its Motion to Compel and:

1. Allow Ford access to the subject Explorer without the following restrictions imposed by Plaintiffs' Counsel:

   a. Requirements that participants *prove to Plaintiffs* that they are vaccinated (or have tested negative/have antibodies); and

b. Requiring experts to be alone when inspecting the vehicle (i.e., the lawyer who hired the expert is not permitted to be with the expert when he/she inspects the vehicle).

2. Amend the scheduling order to allow Dr. Van Arsdell to amend his report pursuant to Rule 26(a)(2) within 14 days of his inspection of the subject Explorer (without the restrictions imposed by Plaintiffs' Counsel, as described above).

This 10th day of December, 2021.

        WATSON SPENCE LLP

        */s/ Philip A. Henderson*
        Michael R. Boorman
        Georgia Bar No. 067798
        Philip A. Henderson
        Georgia Bar No. 604769
        999 Peachtree Street, N.E.
        Suite 1130
        Atlanta, Georgia, 30309
        Telephone: (229) 436-1545
        mboorman@watsonspence.com
        phenderson@watsonspence.com

        - and –

        D. Alan Thomas
        *Admitted Pro Hac Vice*
        Paul F. Malek
        *Admitted Pro Hac Vice*
        HUIE, FERNAMBUCQ & STEWART, LLP

3291 US Highway 280
Suite 200
Birmingham, AL 35243
Telephone: (205) 251-1193
athomas@huielaw.com
pmalek@huielaw.com

***Counsel for Ford Motor Company***

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

>C. Tab Turner
>Damon Singleton
>Turner and Associates, P.A.
>4705 Somers Avenue, Suite 100
>North Little Rock, AR 72116
>tab@tturner.com
>damon@tturner.com
>
>Matthew E. Cook
>Cook Law Group, LLC
>P.O. Box 2415
>Gainesville, Georgia 30503
>matt@cook-lawgroup.com
>
>Jonathan A. Parrish
>The Parrish Law Firm, LLC
>Resurgens Plaza, Suite 2250
>945 East Paces Ferry Road, NE
>Atlanta, Georgia 30326
>jparrish@parrishfirm.com

This 10th day of December, 2021.

>*/s/ Philip A. Henderson*
>Philip A. Henderson
>Georgia Bar No. 604769