IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| CINDY COSPER, Individually as Surviving Child of RONNIE AMMERSON, and ALLAN MYERS, as Temporary Administrator of the ESTATE OF RONNIE AMMERSON<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Civil Action No.<br><br>2:18-CV-0189-RWS |

## ORDER

This case comes before the Court for consideration of a discovery dispute submitted by Defendant pursuant to the Standing Order Regarding Civil Litigation [Dkt.3]. After reviewing the submissions of the parties which are attached hereto as Exhibit A, the Court enters the following Order. As an initial matter, the Court is troubled by the allegation that Defendant never sought to meet and confer concerning its complaints. The parties are advised that the Court expects that they will always confer in good faith in an effort to resolve disputes before submitting them to the court. In this instance, the Court elects to proceed with resolving the

dispute rather than taking the time to sort out the fault of the parties for failure to resolve the issues so as not to cause any additional delay in the case.

Defendant complains that Plaintiffs are placing burdensome and unreasonable restrictions on its ability to inspect the Ford Explorer that was involved in the crash that is the subject of this case. Specifically, Defendant complains that Plaintiffs are requiring that participants in any inspection provide proof of vaccination or that they have tested negative/have antibodies; will allow only one engineer to be present at the vehicle at a time; and will not agree to amend the scheduling order to allow additional time for Defendant's expert reports. It appears from a review of the submissions that "an agreement had been reached to schedule the tear down for 12/16." (Pls.' submission at 2). The current deadline for Defendant's expert reports is December 13, 2021. Under the circumstances, it is clear that additional time will be needed by Defendant to provide the report based on the December 16 inspection. Therefore, Defendant is granted an extension through December 30, 2021 to provide the disclosures required by Rule 26(a)(2).

As for the Covid restrictions imposed by Plaintiffs, Plaintiffs stated a willingness to "discuss any unique issues associated with the protocol," but Defendant never communicated its concerns before contacting the court. Under

these circumstances, the Court finds that the restrictions are not unreasonable and that requiring proof of the vaccine or antibody status of the participants in the inspection will not violate the rights of those persons. Therefore, Defendant's experts will be required to comply with the protocol.

Finally, Plaintiffs did not address the limit of only one engineer being present at the vehicle. The Court finds the limitation unreasonable, especially in light of the intended destructive nature of testing that is planned. As noted by Plaintiffs, it was expected that all parties would attend this inspection. (Pls.' submission at 2). Therefore, a reasonable number of engineers will be permitted to participate.[1]

**SO ORDERED** this 14th day of December, 2021.

_____
RICHARD W. STORY
United States District Judge

---

[1] The Court permitted Defendant to file its Motion to Amend Scheduling Order and to Compel Access to Key Evidence [Dkt. 91] to preserve the issue. However, Defendant was required to proceed with letter briefs as required by the Standing Order. As the court has addressed in this Order the issues raised in Defendant's Motion, the Motion [Dkt. 91] is **DENIED, as moot**. Thus, no response to the motion is required by Plaintiffs.

# EXHIBIT A

## FORD'S SUMMARY OF THE ISSUES

This products liability case involves a 2000 Ford Explorer that Plaintiffs allege was defective in design. After the subject crash, Plaintiffs' counsel took possession of the Explorer and moved it to his facility in Little Rock, Arkansas where there is a charge of 750.00 per inspection, even though this case is pending in Georgia. Ford's experts and counsel have sought to inspect the vehicle, and more specifically, Ford expert Will Van Arsdell has sought to inspect the Explorer and its restraints system since October 2019. (See Email Correspondence, attached as Exhibit A). But in addition to requiring a signed COVID liability waiver, Plaintiffs' counsel have also imposed several burdensome and unreasonable restrictions on Ford's ability to do so. (See Turner & Associates' COVID Protocol, attached as Exhibit A). Ford seeks relief from a small subsection of these restrictions, namely:

1. Participants must *prove to Plaintiffs' counsel* that they are vaccinated (or have tested negative/have antibodies); and,
2. Only a single engineer can be present at the vehicle at a time.

All participants in the inspection will be wearing masks, will be outside (in the event of rain, the inspection may be cancelled, wasting time and expenses), and will have signed liability waivers. These additional restrictions are overly burdensome, unreasonable, and do not protect any interest of Plaintiffs' counsel.

   **1.    Removal of Plaintiffs' unreasonable inspection restrictions.**

Rule 34(b)(1) provides that a party may request the production of evidence so

long as the party specifies "a reasonable time, place, and manner for the inspection and for performing the related acts." The numerous restrictions put in place by Plaintiffs' counsel under the guise of COVID-19 precautions are overbearing and inconsistent with the public policy of Georgia. Namely, Plaintiffs' requirement that participants *prove to Plaintiffs' counsels' employees* that they have received a vaccine or negative COVID test for experts and a vaccine for attorneys violates a person's right to privacy in their medical information. A state court in Arizona just recently considered this exact same restriction imposed by this particular Plaintiffs' counsel and found it was inappropriate:

> I will just say this that right now it has not been established to the Court the necessity or need for any attorney or expert hired by counsel for any of the parties to have to show a negative COVID test or a recent negative COVID test or proof that they've been vaccinated to be able to inspect and view the subject vehicle.

Further, the requirement that only one engineer is allowed at the vehicle at a time does nothing to prevent the transmission of COVID, but does place a great burden on the ability of Ford's attorneys and experts to conduct a useful examination of the vehicle. Plaintiffs' counsel is well protected from liability by his waiver, which no participant is challenging. Further, if Plaintiffs' counsel or his employees are not comfortable being around the vehicle during the inspection, they do not have to be in - the inspection will be videotaped. Plaintiffs' counsel's requirements do nothing to protect themselves and, by limiting access to the most critical piece of

evidence in this case – the crash vehicle – only serve to materially impair Ford's ability to develop and support its defenses in this action, especially through the opinions of its experts.

2. **Amending the Scheduling Order.**

Ford is required by the latest Scheduling Order to issue its experts' Reports by 12/13/2021. Because of the difficulties Ford encountered in scheduling Dr. Van Arsdell's inspection of the Explorer, Ford's Counsel requested an extension of this deadline. Plaintiffs would not agree, *despite Ford having agreed to three such prior extensions for Plaintiffs to disclose their experts*. (See Doc. 56, Doc. 60, Doc. 73).

Dr. Van Arsdell has not been able to complete an inspection of the vehicle, which is critical for him to render full opinions in this case. Ford will disclose all of its experts by today's deadline. However, Dr. Van Arsdell's report will not include his full opinions because Plaintiffs' counsel has denied him reasonable access to the subject Explorer. Thus, Ford requests the Court amend the Scheduling Order to allow Dr. Van Arsdell to amend his Rule 26 Report within 14 days of his inspection of the subject Explorer (without the restrictions imposed by Plaintiff's Counsel, as described above). Additionally, in the event that Dr. Van Arsdell's inspection and findings impact any other Ford expert's opinion, Ford requests the opportunity to allow those experts to amend their Reports as well.

## PLAINTIFFS' RESPONSE TO DEFENDANT FORD'S STATEMENT TO THE COURT REGARDING DISCOVERY AND AMENDING THE SCHEDULING ORDER

We represent the Plaintiffs in the above-captioned products liability case.
This electronic communication is provided as required by the Court's instruction.

In summary, the Plaintiff <u>objects</u> to any extension of time for Ford's expert disclosures. The subject accident occurred in December, 2015. The litigation was commenced in May, 2018. Ford was actively engaged as a defendant in this litigation for close to 2 years before the pandemic even arose, including conducting inspections. The fact discovery cutoff date per the Court's schedule was September 27, 2021. The deadline for Ford to disclose experts was yesterday, December 13, 2021. The Plaintiff has already disclosed experts and already produced its experts for deposition.

Ford's communications have wrongly mischaracterized the facts in an effort to make it sound, falsely, that counsel for the Plaintiffs have not been cooperative. Nothing could be further from the truth.

- First, no person has ever been denied access to the vehicle. We informally requested that counsel correct that statement and they refused.
- Second, Ford (Mr. Malek) has never complained about nor met and conferred about the existing Covid restrictions that are in place at the storage facility. This is the first we have heard of any complaints about the restrictions currently in place according to the medical consultants. As was previously explained to Mr. Malek, there are work-arounds in place for people who do have objections. Those were never requested or inquired about and Ford's communication with the Court was the first we ever heard of any objection.

The following is a brief summary of the correspondence in support of Plaintiff's position:

- First, with regard to the request of inspection, on October 8, 2021, after the fact discovery cutoff date had expired, Ford inquired about doing a "destructive examination" of the subject vehicle. Destructive means they wished to remove components and permanently alter the vehicle. Although such a step is not unheard of, it does require the presence of all parties at the inspection.
- That same day, October 8, Plaintiff advised Ford (Mr. Malek) that *Due to the destructive nature of what is being proposed, I am told that we need to have professionals present who can participate in the process so that is a "joint inspection". Unfortunately, the timing (Oct 20th) is not going to work for the people we need to attend. If your people desire to keep the 20th for a simple visual inspection and set a 2nd date for the proposed removal, we can accommodate that too. If, on the other hand, you want to be efficient and do it one trip, we will cancel*

> *Oct 20th and shoot for some time in November. All I ask is that you let Juan know as quickly as you can so we can make Oct. 20th available to someone else. These warehouses are full these days.*
> - The foregoing correspondence makes crystal clear that Ford was not "deprived" of an inspection. Ford had the choice of proceeding on Oct. 20th and conducting two inspections, the second involving destructive work that all parties would attend. The Plaintiff asked Ford to clarify this mischaracterization, and Ford ignored Plaintiff's request.
> - Thereafter, according to storage facility records, the first email received from Mr. Malak for scheduling was 11/22/21, which was close to a month later and now two months after fact discovery closed and almost 3 years from Ford's first involvement in this litigation.
> - On 11/22, the storage facility promptly offered the first dates available, which were 12/9 or 12/16.
> - On 12/7, Ford advised via email that Mr. Malek's parents were having health issues, but that an agreement had been reached to schedule the tear down for 12/16. Ford also requested a copy of the Covid protocol.
> - That same day, 12/7, Plaintiff responded and advised Ford that: *"You may communicate directly with Juan and Jerry, as always, about Covid protocols. Those are modified monthly by the medical people. I don't really keep up with it unless I am needed to help. For instance, Tandy (a Ford expert) wanted us to add an exception for a positive anti-body test rather than vaccine, and I got that approved for him (and others of course). But that was several months back and I have not had any issues arise since this new variant showed up so I am a bit behind on what the medical people say is safe practices now."*
> - That same day, 12/7, Ford was advised that *"And we also make exception for the view and photograph inspections only where our people and equipment is not needed. In those instances, we can move the vehicle outside, weather permitting, and far enough away from everyone that we don't bother with the protocols. But that's only where visual inspection only is being conducted. I have no idea what is being done here, but just FYI. If our people or our equipment is needed, we have to follow the protocols."*

The first the Plaintiffs heard of any objection or problem from Ford relative to the Covid protocol was Ford's email to the Court. No attempt was made to confer about the protocol, discuss the current state or discuss any unique issues associated with the protocol, including exceptions that could be made that still protect employees, workers, and visitors. And certainly nobody from Ford ever contacted us to request some deviation.

Regarding Covid protocols for entry on property, the facility is not a public facility and the facility is entitled to do what it feels necessary to ensure the safety of the employees. Not only is Ford's argument endangering the facility's employees, but frankly is endangering Ford's experts and other visitors to the facilities. Following this to its logical end, a

different party's expert could carry and spread the virus (because they are unvaccinated and/or did not have a negative test), cause Plaintiff's employees to contract the virus, and then Ford's expert could acquire the virus from the facility's employees.

Ford also falsely claims that a vaccine is required. That is not true. The protocol does <u>not require entrants to have the</u> vaccination, but merely makes proof of vaccine one method of entry. The expert can also show a negative test result just as the airlines require. A perfect example is *United States v. Burke*, No. CR-20-00495-001-PHX-DLR, at *2 (D. Ariz. July 2, 2021)(continuing the trial when a Defendant refused to respond whether he was vaccinated or not, because his failure to respond made the court assume he was unvaccinated. The court felt an unvaccinated defendant was too big of a risk to the rest of the court attendees.).

The pandemic has not been easy on anyone. Plaintiff is equally bothered by the global pandemic we have all endured the past 18 months as anyone else. However, Ford's annoyance with the inconvenience presented by the pandemic does not give Ford a right to ignore health and safety protocols. The facility should be allowed to follow the advice of health officials in protecting the safety of employees and all visitors to her facility.

Ford has had more than sufficient time to conduct inspections over the past 3 years. In fact, Ford has conducted all inspections but this one during the pandemic and never once complained, which is proof in itself that this is a contrived excuse for being ill-prepared.

Ford also insinuates in its submission that three extensions of discovery have been granted for Plaintiffs' sole benefit. That is not true. The three prior amendments to the scheduling order were for both parties and amended the deadlines for fact discovery and expert disclosures for both parties. Indeed, Ford conducted fact discovery up until the deadline for completion of fact discovery. Plaintiffs complied with the Court's last scheduling order, which both sides agreed to follow. Now that Plaintiffs have met the required deadlines, Ford seeks special treatment and has made misrepresentations to the Court in doing so.

An extension of time is unreasonable and unnecessary. Ford should be required to disclose experts immediately.