IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| CINDY COSPER, Individually as Surviving Child of RONNIE AMMERSON, and ALLAN MYERS as Temporary Administrator of the ESTATE OF RONNIE AMMERSON, <br><br>　　　　Plaintiffs, <br><br>v. <br><br>FORD MOTOR COMPANY, <br><br>　　　　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§ CIVIL FILE NO.: **2:18-cv-00189-RWS**<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

_____

### DEFENDANT FORD MOTOR COMPANY'S SUPPLEMENTAL BRIEF IN SUPPORT OF CERTIFICATION TO EITHER THE ELEVENTH CIRCUIT OR THE GEORGIA SUPREME COURT

Defendant Ford Motor Company ("Ford") files this Supplemental Brief in support of certification of certain questions to either the Eleventh Circuit Court of Appeals or, in the alternative, to the Georgia Supreme Court.

### INTRODUCTION

During the December 20, 2022 status conference, the Court indicated that if it certified a question, it would be more inclined to do so to the Georgia Supreme Court, not the Eleventh Circuit. The Court then asked the parties to address two related logistical questions. First, the Court asked if this is an appropriate case for certification under 11 U.S.C. 1292(b) given this Court's ruling that a genuine issue

1

of material fact exists on whether Ford acted willfully and wantonly in designing the roof on the 2000 Ford Explorer. (Doc. 158 at 51-54). In other words, would the Eleventh Circuit's answer to Ford's posed certified question resolve this case in its entirety? Second, the Court asked the parties to address the timing issue, given the age of this case: how long would the certified question process either to the Eleventh Circuit or the Georgia Supreme Court ultimately delay the resolution of the case?

## IMPORTANCE OF THE QUESTION – THE CORRECT RULE OF LAW

The correct interpretation of Georgia's repose statute is material to the correct resolution of the issues in this case. If either "recklessness" is not a standalone exception to the repose statute or the *Walden* Court of Appeals' definition of "recklessness" is not the one the Georgia Legislature intended, this case will likely need to be retried. It is Ford's preference that these questions be certified to the Eleventh Circuit. However, Ford agrees that ultimately the Georgia Supreme Court may be the better forum.[1] Both questions involve statutory construction of Georgia's repose statute.

---

[1] O.C.G.A. § 15-2-9 allows that when it shall appear to a district court of the United States in any proceeding before it that questions of the laws of Georgia are determinative of the case and there are no clear controlling precedents in the decisions of the Georgia Supreme Court, "such federal court may certify the questions of the laws of this state to the Supreme Court of this state for answers to the questions of state law, which certificate the Supreme Court of this state may answer by written opinion." As the discussion herein reflects, as does Doc. 158, the questions posed herein meet this criterion. It does not appear that the Georgia Supreme Court has ever addressed whether "recklessness" is a standalone exception to the statute of repose and, assuming it is, what definition did the Legislature intend.

Even though the answers to both questions are matters of statutory construction, the Georgia Court of Appeals in *Walden* did not apply any rules of statutory construction. Indeed, that analysis is notably absent from the court's opinion. More problematic, the definition of "recklessness" the *Walden* Court of Appeals selected does not appear to be one the Georgia Legislature has *ever* used. Compounding those problems, the definition is both confusing and not easily applied.

*Walden* relies upon the following definition of "recklessness" contained in *Arrington v. Trammell,* a case that did not involve Georgia's repose statute:

> We have defined a reckless act as an act that is "intended by the actor, [although] the actor does not intend to cause the harm which results from it. It is enough that he realize or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct may prove harmless." *Arrington v. Trammell*, 83 Ga. App. 107, 112, 62 S.E.2d 451 (1950) (citation omitted).

*Chrysler Grp., LLC v. Walden*, 339 Ga. App. 733, 792 S.E.2d 754, 760-61 (2016).

That definition stands in sharp contrast to the definition of "recklessness" the Legislature has used:

> (b) A person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his or her act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable

3

>person would exercise in the situation is guilty of a misdemeanor.

O.C.G.A. § 16-5-60, *Reckless conduct.*

It is the same definition the Georgia Supreme Court very recently used. *See McIver v. State,* 314 Ga. 109, 126-27, 875 S.E.2d 810 (2022). More importantly, it is not a new definition of "recklessness." Its origin can be traced back to 1933. As carried forward in the 1968 revision, O.C.G.A. § 26-2910 provided that "[a] person commits a misdemeanor when he causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause the harm or endanger the safety, and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." That same substantive definition was then carried forward in O.C.G.A. § 16-5-60 (see above).

Hence, a substantial ground for a difference of opinion exists on whether the *Walden* court "got it right." The Georgia Legislature's definition and the *Arrington* definition of "recklessness" could not be more different. The two definitions describe "recklessness" as involving different conduct. The Georgia Court of Appeals provides no reason for ignoring the Legislature's definition.

It should not be lost in the discussion that the current case and *Ivy* both involve the same vehicle (Ford Explorer) and the same defect allegation (handling and stability). Yet, the outcome in *Ivy* is different than the outcome in this case. No one

4

contends the factual records in the two cases are the reason. Whether the statute of repose bars Plaintiffs' claims turns on the two questions of law identified above. Applying the *correct* rule of law is important to the ultimate resolution of this case.

Georgia's repose statute delineates a fixed period in which any accrued right must be pursued. *See* Ga. Practice & Procedure § 30:1, *Constitutionality and General Principles; Statute of Limitations Compared to Statute of Repose* (2022-2023 ed.). Unlike statutes of limitations, a repose period is absolute, eliminating any previously existing rights. *Id.* If the action is filed outside the prescribed period, it is not actionable. The purpose of repose is to address and eliminate problems with open-ended liability of manufacturers and stale claims. *See Johnson v. Ford Motor Co.,* 281 Ga. App. 166, 637 S.E.2d 202 (2006), *overruled on other grounds by Campbell v. Altec Indus., Inc.*, 288 Ga. 535, 707 S.E.2d 48 (2011); *see also Chrysler Corp. v. Batten*, 264 Ga. 723, 728, 450 S.E.2d 208, 213 (1994) (Hunt, C.J., and Fletcher, J., dissent) ("[T]he purpose of the statute… was to eliminate stale claims and provide a definite time beyond which a manufacturer is no longer subject to liability"). There is at least a substantial ground for disagreement on whether *Walden's* definition of "recklessness" furthers those purposes.

**THIS CASE IS APPROPRIATE FOR CERTIFICATION TO THE ELEVENTH CIRCUIT**

The answer is "yes" to the question of whether an immediate appeal may materially advance the ultimate termination of this litigation *in its entirety*. While

the Eleventh Circuit's decision to exercise review under Section 1292(b) is discretionary, once it does so, that discretion extends beyond the initial decision to permit appeal. *See* Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3929.  Appellate jurisdiction applies to the order certified and is not tied to the particular question formulated by the district court. *Id.* (*citing Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996)).  As the Eleventh Circuit noted in *McFarlin v. Conseco Servs., LLC,* 381 F.3d 1251, 1256 (11th Cir. 2004), once it accepts the certified question it has the power to "review an entire order, either to consider a question different from the one certified as controlling or to decide the case despite the lack of any identified controlling question." (*quoting Yamaha Motor Corp*, 516 U.S. at 205).[2] In short, the Eleventh Circuit can also review the Court's application of *Ivy* to Plaintiff's roof design defect claims if it chooses to do so and there are reasons to do so.

While the question of whether "recklessness" is a standalone exception that may be proven to avoid repose remains the central question, it is not the only *Ivy* related question.  After noting that "recklessness" is not grounds for imposing punitive damages in Georgia and that the governing standard is whether the defendant engaged in willful misconduct or acted with wantonness, this Court held that it was "bound by Georgia courts' interpretation of O.C.G.A. § 51-12-5.1(b) and those courts appear to reject any bright line rule set forth in *Ivy*." (Doc. 158 at 47

---

[2] The scope of appellate review appears to be broader than O.C.G.A. § 15-2-9.

6

citing *Moore v. Wright Med. Tech., Inc.,* 2016 WL 1298975, at *6 (S.D. Ga. Mar. 31, 2016)).[3] Relying upon *Moore's* summary of Georgia law, this Court employed a "balancing approach." *Id.* Under that approach the Court concluded that Plaintiff put forth enough evidence to "justify punitive damages, but only for her roof design defect." (Doc. 158 at 47). In other words, the Court called into question *another* holding in *Ivy,* one involving the requisite proof of culpable intent for imposing punitive damages. There must be proof that the defendant was acting badly, but what that means is subject to debate. As the Court's analysis reflects, this too is an important question of substantive Georgia law.

This case—a crashworthiness case—more than most is also a factually good candidate to examine challenges to *Ivy's* recitation and application of Georgia law on punitive damages. The basic inquiry is how best to protect occupants involved in a rollover crash. Neither willful nor wanton conduct exists when a manufacturer follows recognized science in its strategy to protect vehicle occupants.

The record here does not support the proposition of a known risk of injury in rollover accidents caused by the roof crushing down and injuring occupants—the basic defect claim that underlies Plaintiff's entire punitive damage claim and

---

[3] *Moore* does not discuss *Ivy,* instead relying upon *Mims v. Wright Med. Tech., Inc.*, No. 1:11-cv-213-TWT, 2012 WL 1681810, at *4 (N.D. Ga. 2012). The same is true for *Mims*. Both *Mims* and *Moore* discuss pre-*Ivy* caselaw. What the Court has identified is more appropriately an unwillingness to apply *Ivy,* not any subsequent change in the rule of law.

claimed repose exception. All crash testing *using instrumented crash dummies* uniformly reflects that if severe head and neck injuries occur in a rollover crash, those injuries occur *before* significant roof deformation. Increasing the roof strength at levels above FMVSS 216 does not provide a benefit to occupants in rollover crashes. A vehicle with a stiffer roof or a rollbar might look better after a rollover accident, but the outcome to the occupants is the same because of *when* the injurious contact occurs in relationship to when the roof deforms.

Plaintiffs do not seriously challenge any of this. Indeed, they lack any basis to do so. There is no contrary crash testing using instrumented dummies that examines what happens to the occupants in rollover accidents in relationship to roof deformation and documents the roof crushing down and injuring anyone. Plaintiffs neither have nor rely upon any crash testing using an instrumented crash dummy to assess whether a stronger roof is a safer roof in an accident like this one or any rollover accident, let alone at their advocated roof strength level. Factually, this is the classic situation of a reasonable dispute. At best there are opposing sides to the dispute over whether increasing roof strength prevents occupant injuries in rollover crashes. Mainstream testing—nearly 40 years of it—backs up the roof strength conclusions reached by auto manufacturers. Given that testing, confirmed by field analysis and laboratory testing and its widespread acceptance within the relevant industry, neither Ford nor any other auto manufacturer could have formed the

requisite evil culpable intent to support clear and convincing proof of willful and wanton conduct. In other words, a defendant cannot be said to have acted badly if his or her conduct is within the industry mainstream. The *Ivy* measuring sticks stretch further than mere compliance with applicable government standards.

While neither the parties nor the Court can control the scope of the Eleventh Circuit's exercise of its discretionary review, the wording of the certified question can invite broader review. That can be accomplished in two ways. First, the question certified to the Eleventh Circuit can be broadened to invite that review:

> CERTFIED QUESTION: In granting in part and denying in part the Defendant's Motion for Summary Judgment, the Court was required to apply the Eleventh Circuit's holdings in *Ivy v. Ford Motor Co.,* 646 F.3d 769 (11th Cir. 2011). In light of subsequent Georgia Court of Appeals' decisions, are the following correct legal principles under Georgia law:
>
> (1) "Recklessness" is a standalone exception that may be proved to avoid the statute of repose in Georgia;
>
> (2) the correct statutory definition of "recklessness" to be applied is the one used in *Chrysler Grp., LLC v. Walden*, 339 Ga. App. 733, 792 S.E.2d 754, 760-61 (2016); and
>
> (3) there is no bright line rule that a bona fide dispute over the propriety of the defendant's actions negates willful and wanton culpable intent under Georgia law for imposition of punitive damages and evidence of generally choosing profits over safety is some evidence of willful and wanton conduct.

Second, the following language can be added to the certified question:

9

> "The Court disclaims any intention or desire that the Eleventh Circuit confine its reply to the precise form or scope of the questions certified. The answers provided will determine the issues in this case and evidence admissibility."[4]

**KNOWING THE CORRECT RULE OF LAW IS WORTH ANY TEMPORARY DELAY**

The Court's second question is how long would it take either the Eleventh Circuit or the Georgia Supreme Court to answer a certified question? In other words, how long will that process delay the resolution of this case?

Estimating the time the Eleventh Circuit would take in answering a certified question is difficult. Both the available government compiled court data and anecdotal examples reflect a broad range.

In contrast, with respect to the Georgia Supreme Court, there is recent history that provides better guidance. In *Domingue v. Ford Motor Company*, 314 Ga. 59, 62-66 875 S.E.2d 720 (2022), the Middle District certified essentially three questions of statutory construction to the Georgia Supreme Court. The timeline in *Domingue* from request to opinion from the Georgia Supreme Court was as follows:

---

[4] This is substantially the same language included in the question certified to the Georgia Supreme Court by the Middle District to the Georgia Supreme Court in Case 7:20-cv-00098-HL, (Doc. 64), *Kristen Domingue and Casey Domingue v. Ford Motor Company*, U.S. District Court, Middle District of Georgia, Valdosta Division.

| Date | Motion/Filing |
|---|---|
| October 19, 2021 | Emergency Motion to Amend Certified Questions to the Georgia Supreme Court |
| October 28, 2021 | Certified record accepted by the Georgia Supreme Court and the case docketed |
| December 14, 2021 | Completion of appellate briefing |
| February 15, 2022 | Oral argument before the Georgia Supreme Court |
| March 15, 2022 | Completion of all amicus curiae briefing |
| July 26, 2022 | Notice of Filing of Remittitur and Opinion by the Georgia Supreme Court |

The Georgia Supreme Court acted promptly, once the (amended) certified question was received. The process was completed in approximately nine months. Based upon what occurred in *Domingue*, the resolution of this case will not be unduly delayed and indeed could be shortened if either the Eleventh Circuit or the Georgia Supreme Court answers the certified questions differently than in Doc. 158. The importance of applying the correct rule of law remains the cornerstone of prompt finality of matters. As this Court noted, applying the wrong rule of law could delay this case even further.

11

This 6th day of January, 2023

                                              Respectfully submitted,

<u>*/s/ Philip A. Henderson*</u>
Michael R. Boorman, Esq.
Georgia Bar No. 067798
Philip A. Henderson, Esq.
Georgia Bar No. 604769
WATSON SPENCE LLP
999 Peachtree Street, N.E.
Suite 1130
Atlanta, Georgia 30309
Telephone: 229-436-1545
mboorman@watsonspence.com
phenderson@watsonspence.com

D. Alan Thomas, Esq.
*Admitted Pro Hac Vice*
Paul F. Malek, Esq.
*Admitted Pro Hac Vice*
HUIE, FERNAMBUCQ & STEWART, LLP
2810 Highway 280 South, Ste. 200
Birmingham, Alabama 35223-2484

Michael W. Eady
*Admitted Pro Hac Vice*
THOMPSON COE COUSINS & IRONS, LLP
2801 Via Fortuna, Suite 300
Austin, Texas 78746

***Attorneys for Defendant Ford Motor Company***

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

C. Tab Turner
Turner and Associates, P.A.
4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
*tab@tturner.com*

Matthew E. Cook
Nathan Nicholson
Cook Law Group, LLC
P.O. Box 2415
Gainesville, Georgia 30503
*matt@cook-lawgroup.com*
*Nathan@cook-lawgroup.com*

Jonathan A. Parrish
The Parrish Law Firm, LLC
Resurgens Plaza, Suite 2250
945 East Paces Ferry Road, NE
Atlanta, Georgia 30326
*jparrish@parrishfirm.com*

*/s/ Philip A. Henderson*
Philip A. Henderson
Georgia Bar No. 604769